Mr. Korfman, welcome to our party. Good morning, Your Honor. Good morning. May it please the court, Jack Korfman from the Federal Defender on behalf of Ronald Morgan, appellant in this case. This case also raises the common design issue. And I'm happy to talk about it further if the court has questions, although it seems like we may have exhausted that topic. So I want to put. We never exhausted that topic. No, no, no, we have not exhausted that topic. Add whatever you think you can add to Mr. Hardwick's and Ms. Alexis. The only thing I want to add, I think, is that the Gomez case endorses this kind of labeling mechanism. I think that that's the wrong inquiry under the categorical approach. And even if it were the right inquiry, we know that the aiding and abetting doctrine actually has a different label from generic aiding and abetting. It's not called aiding and abetting. The Illinois courts don't call it that. They don't apply it in the same way. And so even if it were true that a narrow rule that aiding and abetting would not count in a categorical inquiry, common design is not the same thing and would be, I think, have to be addressed separately from that. But I'm happy to. Let me just go back a minute. And given, I think I asked this of Mr. Hardwick, or I meant to, given that one, I don't remember anymore. Given that one's role as accomplice or principal is not an element of the offense, how does nature of accomplice liability properly factor into categorical analysis? So I think maybe Mr. Hardwick answered this. But the way it factors in is that the court tells us that you have to look at the least culpable conduct that would sustain the conviction to a jury. And we know from Illinois state cases and from accomplice liability theories in general that accomplice liability is a way to sustain a conviction before a jury. And therefore, it is a way to commit a substantive criminal offense in the least culpable conduct. And that's the reason that it comes to this court and matters to the categorical approach is because it is a way to commit a substantive offense with a different kind of conduct than the substantive offense we normally think of as being committed. But as the Illinois courts are very clear about, it is not divisible. There does not need to be a separate set of charging or proof in some specific way that would divide it out under a modified categorical approach. And do you think it possibly could have been the intent of Congress or the Sentencing Commission to disqualify all Illinois convictions as predicates for federal sentencing purposes? So I'm sure that was not the specific intent of any of the actors involved. I do think that when the Supreme Court invented or applied the categorical approach in the original Taylor case in 1990, it was opening the door to this kind of categorical exclusion. Illinois is one state out of 52 jurisdictions that apply this kind of analysis in the federal context. And if one of those states has a type of offense that is categorically overbroad, that has always been true that that categorical offense is overbroad in general. I don't know that anybody looked specifically to this state doctrine. But as I think we talked about in the appendix, this is, as far as we can tell, the only doctrine that reaches that far. And so it is the nature of a unique overbreadth doctrine to be overbroad in that way and to exclude an offense. So I think it is the logical result, even if no actor was actually intending for Illinois to be excluded in this specific way. Speaking of Taylor, I also want to talk about the Taylor issue. I know that several judges on the panel have written about this issue before, and so I'm happy to answer questions. But I want to be clear from the start that at the time of Mr. Morgan's sentencing, this issue was not available to him.  which said that Illinois robbery was a crime of violence. And then the Hill and Ingram decisions from this court, which said that the attempt to commit a crime of violence was itself a crime of violence. That comes from Judge Hamilton. And then we get Taylor, after Mr. Morgan has been sentenced, that says, no, no, no, this broad sense of that understanding of the force clause is not correct, at least in the narrow way that the attempt to threaten does not meet the test of the force clause. And that's exactly what is true for Illinois robbery. You can commit Illinois attempted robbery by attempting to threaten, which reaches the 2022 Taylor rule and puts it outside the scope of the force clause. And it's only then, after we get the Taylor decision, that Mr. Morgan can then go back and say, OK, now that we don't meet the elements of the force clause, what else is there to sustain attempted robbery? And the answer is that there isn't anything else in the section 4B1.2 of the guidelines to sustain that. As it stands now. As it currently exists. So under 3553A, should any of this matter? So it wouldn't necessarily matter. The judge would be free to say, I understand that this is basically a crime of violence, even if it doesn't count. And I want to treat it as if it's more serious than the guidelines treat it to be. The judge could say that. But we know from Supreme Court precedent that the judge always has to calculate the guidelines correctly first. And so on remand, maybe the judge would be allowed to weigh whether or not that counts. But it would still have to correctly decide whether or not the guidelines existed, what the proper guidelines were before it reached that decision. And in this case, Judge Canelli did weigh, at least in part, what the guideline bridge was when reaching what the right sentence was. And so I think there is no argument on this record that the sentence would be inherently the same, even if the guidelines were changed. And I think, just to complete the line of thought, when the Lomax case comes back at sort of the end of this timeline and decides that, in fact, attempted in Lomax, it's a murder, but the enumerated offense of murder includes, through the application note, attempted murder, what the Lomax case is doing is it's sort of jumping over several cases along the way. And it re-adopts this court's decision in Adams, which explicitly distinguishes the crime of violence definition. Adams is about the controlled substance offense definition, which is textually distinct. And it says, we apply the application note to the controlled substance offense definition. And when Lomax sort of completes the circle and says, OK, we've already done this in Adams, so now we're going to do it again for crimes of violence, Lomax does that. It doesn't acknowledge that Adams is making that distinction. And more importantly, it doesn't acknowledge either D'Antoni or Rollins, which have already said that there is a different way in which this court approaches the crime of violence definition. And there's a different way in which the court thinks about how the application note applies to the crime of violence definition. And that's not in the opinion of Lomax at all. And I think that the opinion of Lomax, the exclusion of D'Antoni and Rollins from Lomax leads to the wrong place. Because without looking for an ambiguity, Lomax says, we don't really know what the answer is. But that's not true. We do know what the answer is, because the answer is to look for an ambiguity in the text of 4B1.2a. We know from Taylor that there's no ambiguity in the force clause, 4B1.2a1 from Taylor. And we know from the text itself of the enumerated clause, 4B1.2a2, which only includes an offense that is robbery, that that excludes attempted robbery. Attempted robbery is not the same offense as robbery. It has distinct elements. It is a distinct crime. It has to be proven separately. And there's no space in the enumerated clause to include some other definition. And so when we know from Rollins that when you add with the application note an offense to the text of the guideline, that is necessarily inconsistent with the guideline itself. And that application note gets no deference. I'd like to reserve, unless there are questions, the remainder of my time for rebuttal. No. OK. You must be exhausted from this. I'm having fun, Judge. May it please the court, Georgia Alexnicki is representing  This court should have a hearing on this case to affirm Defendant Ronald Morgan's sentence. On the common design issue, I will simply recap at a very high level what I've already told the court earlier, which is that this court needs to, under the categorical approach, must focus on the statute of conviction, the actual offense of conviction. And when doing that, there is no indication that the defendant was convicted under the common design doctrine. But even if he were, given the now off-stated principle that there's no legal distinction between principles and aiders and abettors of any kind, that even if he were convicted under the Illinois common design doctrine, that would have no bearing on the categorical approach in this issue. And the district court, in that regard, properly treated his crimes of violence as predicate offenses for purposes of the career offender provision. And I will also note that the government, in its brief, has extensively laid out why, even if the court were to look at the Illinois common design doctrine and its contours, why those contours don't place it outside of the mainstream with respect to generic aiding and abetting, and instead puts it squarely in the natural and probable consequences umbrella, which numerous jurisdictions have in place. So what do we do with the Illinois so-called misdemeanor rule, which is pretty hard to put in line with any other state's laws? Yeah. And Judge, I think that there is language in the Illinois cases that talk about the misdemeanor. I think it's called the misdemeanor manslaughter rule. Or there are Illinois cases that talk about a lack of foreseeability. And despite that lack of foreseeability, someone being liable under the common design doctrine. What I would say to that is that those words, when you look at the actual facts of the cases, they don't seem to have that. They don't seem to bear legal significance. You look at those facts, and you see individuals who are being held liable for a murder that was committed in the course of a burglary, or an assault, a murder that was committed in the course of a planned armed attack. You don't see a situation in which a defendant is, in fact, being held liable for a crime that literally comes out of the blue. And so from that standpoint, I guess the way I would sum that up is to say that it doesn't appear that the common design doctrine passes the realistic probability test. Or at least that the misdemeanor manslaughter language that shows up in some Illinois common design doctrine cases passes the realistic probability test. And at the end of the day, that's the backstop for the categorical approach. Ms. Alexakis, I don't know why I'm having trouble with your name today. No one can say my name, Judge, it's fine. Well, I have to see the dentist, I guess. Ms. Alexakis, when you were here in April, do you remember that? I do. Arguing the Carr case, you commended Judge Collins' concurrence in the Ninth Circuit's Alfred case as the better reasoned approach. So what I did was I went back and looked again at that case. And I agree with you that Judge Collins' discussion of why one's conviction as an accomplice or a principal shouldn't matter to the categorical inquiry has a certain merit to it. I'm just not sure as to how to reconcile it with the Supreme Court's decision in Duanes-Alvarez, which seems to agree that accomplice liability does have to be considered in the categorical inquiry, although it doesn't explain why or how. I'm really sorry to keep bringing this up, but please help. Yeah. Please, yeah. I'm happy to try, Judge. But to me, what it comes back to is that in Duanes-Alvarez, the accomplice theory of liability was in the statute of conviction. And I don't think that, and I know the defendant tries to ignore that distinction, but I really don't think that that's a distinction that can be ignored, because I think it is a way to reconcile this tension that I was talking about earlier with Judge Hamilton, between the cases, the categorical approach suggesting that, or directing us to consider the least culpable means by which an offense can be committed, but at the same time, restricting that analysis to the offense of conviction, to the statute of conviction. And so I think Duanes-Alvarez can be reconciled with the concurrence in Alfred on that basis, because in Duanes-Alvarez, the vehicle theft statute that the defendant was, in fact, convicted under, on its face, incorporated an aiding and abetting theory of liability. But the defendant in Duanes-Alvarez wasn't arguing that, in general, the criminal code in California, or even in general, the vehicle theft code of California, could have made him liable under an aiding and abetting theory of liability. And so that's how I would reconcile those two, Judge. I would like to move to the argument regarding what deference is owed to the application note one to the guidelines for your offender provision. As just an initial matter, I do think that it is appropriate for this court to review that claim for plain error. This was simply not a challenge that was raised in the district court. It was a challenge, however, that was available to the defendant. The defendant's argument on appeal is entirely that Lomax, which was decided after his sentencing deviated from existing Seventh Circuit precedent. Kaiser was decided in 2019. And so the argument was available to him. He did raise a challenge. Go ahead, Judge, I'm sorry. No, I thought there was a question. I'm sorry, Judge. Defendant did raise an argument in the district court regarding Ingram, despite the then futility of that argument, and yet did not make this corresponding argument. Be that as it may, when you move to the merits, note one is simply not inconsistent with the guidelines text. And so as a result, an in code offense-like attempt can, in fact, be a crime of violence. This court concluded that in Adams, when it relied on Ropp to say that there cannot be a conflict because the text does not tell us one way or another, whether in code offenses are included or excluded. The note says they are included. That's the language from Ropp relied upon by Adams. And reciting that language, Adams rejected the idea that the plain language of 4B1.2b could mean nothing other than what was squarely set forth in that text. The Seventh Circuit reiterated, this court reiterated that conclusion just two years later in Smith. Now, yes, Adams and Smith were controlled substance offense cases. And the defendant takes issue with Lomax's application or extension of that holding to 4B1.2a, the crime of violence definition. But there is nothing improper about what Lomax did. By its plain language, note one applies to both subsections. The purpose of 4B1.2 was to enhance sentences of both repeat violent offenders and repeat drug traffickers. And we know that from the underlying statute. And the logic of Adams and Smith applies equally to both provisions, 4B1.2a. So what do we do with the tension among Lomax and D'Antoni and Rollins? And I don't see tension there, Judge. I think that what D'Antoni does is it explains, relying on Hill, that Ropp has, and I believe the language was, unimpaired precedential force now that they were intervening legal developments with Hurlburt and Beckles. Well, after all of that gets sorted out, D'Antoni's Hill, repeated by D'Antoni, say that Ropp has unimpaired precedential force. And I understand that Ropp's logic originally linked, was tied to the residual clause. And we don't have a residual clause anymore, obviously. And obviously, the residual clause injected ambiguity into the situation. But the removal of the residual clause doesn't mean that any ambiguity disappeared, too. Adams and Smith recognized that. And I think Lomax properly recognized it as well. So we can just sail on our way without having to revisit D'Antoni or Rollins? I don't think that there is a reason that the court needs to unpack the history. I think what the court can do is look to the logic of Adams and Smith. Well, I think what the court can do is exactly what the court did in Lomax, which is extend the logic of Adams and Smith to the crime of violence definition. I think Lomax was aware of the fact that Adams and Smith were controlled substance defense cases and not crime of violence cases. But how do we deal with the fact that it said nothing about Rollins or D'Antoni? I think the way to deal with that is to, I suppose, to say that perhaps Adams and Smith wrote from a blank slate from that standpoint. And I think what Adams says is we recognize that there's this, I'm paraphrasing here, a messy history associated with application note one as it applies to crime of violence. We don't have to deal with that because we're talking about the controlled substance offense issue. And I think there's nothing improper about what Lomax did, which was to say, this court doesn't have to address Rollins and D'Antoni. We can start from Adams and we can start from Smith. And those cases recognize that there is no inconsistency between the plain text and the application note, that there's no reason why that same logic can't apply to the crime of violence context, regardless of what may have previously been said about the residual clause. And so I think the question really is, did Lomax err in extending Adams and Smith to the crime of violence context? And I think the answer is no. I see my time is up unless there are any additional questions. The government would ask that this court affirm the defendant's conviction and sentence. Thank you. Thank you very much. I'd like to make two points. First, that is not what D'Antoni says. D'Antoni says, I'm going to read from the opinion. In Hill, we commented that Beckles' elimination of vagueness challenges to the guidelines undermines Rollins, so we treat Rout as having unimpaired presidential force. As D'Antoni aptly observes, however, Beckles does not touch Rollins' holding about the role of guidelines commentary. The government, too, concedes that Beckles did not reach the commentary issue. And then the court goes on to say, we recognize that other circuits, but we are bound by this court's holding across, and therefore Rollins remains valid as a case about the interpretation of the guidelines, and Rollins remains the case that is applied in D'Antoni about what deference the application note gets to the text of 4B1.2a. That it did not say that we started on a blank slate. It did not say that there is no need to consider those cases. D'Antoni says, this is still the rule, at least for crimes of violence, and we apply it here. And it actually, in D'Antoni, said that means that we don't give deference in this case. And RAUP itself is, of course, about the residual clause, which no longer existed, either after 2016, when the Sentencing Commission removed it, and wasn't in force at the time of Mr. Morgan's sentencing hearing last year. D'Antoni remains good law. And the other note about preservation is, before Taylor, while Judge Hamilton's opinion was correct, there was clearly a textual tether to the application note, because it was part of the force clause. And so there was no purpose to making an obviously frivolous Keiser deference argument at the time, because the textual source was the force clause, which existed. And it's only after Taylor undoes, at least to an extent, what the force clause is, that that becomes relevant. Finally, really briefly, on pages 39 to 43 of Mr. Morgan's brief, and I know they're also cited in Mr. Hardwick's, there are about common design, and how they can be applied in cases that would not meet the foreseeability test in any other jurisdiction. Thank you. If I could just ask you one basic question. Illinois robbery. Four men come into a bank. One stays out as the getaway driver. All five wind up being prosecuted. Guns are drawn by the people in the bank. Are any of them, as you view, and they're all convicted of robbery, have any of them committed a qualifying violent offense under the guideline? Because one guy did not. So not under the guideline under common design, because of the way in which common design liability is applied. So none of them. But again, as we've talked about already, the court can still say at a sentencing hearing, even if this doesn't qualify, it sure seems like this guy was in the building at the time, and I'm going to consider that as distinct from somebody who came into my court who was sitting as the getaway driver. Thank you. Thank you, Your Honor. Thank you. Thank you. You know, Mr. Corfman and Ms. Oleksiewicz, you're under no obligation. You are absolutely not under any obligation, but you may wish to stay for the next case and just listen. I will, Your Honor. Thank you. OK. And of course, the case will be taken under advisory.